Lee *vs.* Clark.

---

AUGUSTUS H. LEE, plaintiff in error, *vs.* WILLIAM W. CLARK, executor, defendant in error.

1. The question in this case as to the land having been discharged from the lien of the mortgage judgment, on account of the four years' possession by a *bona fide* purchaser, comes within the principle of the decision in *Akin vs. Freeman,* 49 *Georgia Reports,* 51, even if mortgage judgments are included in the provision of section 3583 of the Code.

2. Whether the witness who was rejected by the court, was or was not competent, is an immaterial question in this case, as it does not appear from the record that his testimony could have been of any benefit to the party offering him.

Mortgage. Judgment. Statute of limitations. Claim. Damages. Immaterial error. Before Judge HALL. Newton Superior Court. September Term, 1873.

William W. Clark, as executor of William D. Conyers, deceased, on October 29th, 1868, caused a mortgage execution, dated October 3d, 1860, based on a mortgage dated December 3d, 1859, against Turner Horton, for $3,141 42, principal, and $177 41, interest to September 22d, 1860, (the date of the judgment on the foreclosure,) and costs of suit, with a credit thereon of $370 00, of date October 27th, 1863, to be levied upon the property described therein. A claim thereto

was filed by Augustus H. Lee. Upon the issue thus formed, substantially the following evidence was introduced:

1st. The mortgage and execution, with all the entries thereon.

2d. Affidavit of illegality by Turner Horton and Augustus H. Lee setting up the dormancy of the judgment, and their desire to avail themselves of the benefit of the relief act of 1868, with the judgment of the court thereon in favor of the plaintiff for costs.

3d. The claim of Augustus H. Lee, with the usual issue formed thereon.

### FOR THE CLAIMANT.

1st. Deed covering the premises in dispute, from Turner Horton to Augustus H. Lee, dated January 11th, 1864.

2d. The answers of O. L. Prophitt to a set of interrogatories, to the effect that William D. Conyers stated to him, about the last of February or first of March, 1863, that he was willing to receive Confederate money in payment of the mortgage debt; that he remembered the conversation, for the reason that he was interested in having the mortgage debt paid off; that his interest was as follows: He bought a tract of land from Horton, believing it to be free from all incumbrances. Upon his return to Covington in 1863 he was about trading the land, when he ascertained that it was embraced in a mortgage to Conyers. He called on Conyers to see if he could induce him to release that tract of one hundred acres, in order that he might sell it. He refused to release it, but said that he thought by seeing Horton the matter could be arranged in some way. Witness then arranged a meeting between Conyers and Horton at Covington.

That when Conyers returned home from the square where he had an interview with Horton, he passed directly in front of witness' office, called to witness, and stated to him that Horton had agreed to pay in Confederate money, and he had consented to accept it. That this occurred about ten o'clock in the morning; that about two or three o'clock in the evening of the same day, Conyers came back to his office, and

inquired if Horton was in; that witness told him he was not, whereupon he said that he had declined taking Confederate money for the mortgage. That witness asked him his reasons. That he replied that Horton had seemed careless about the matter, had kept him waiting two or three hours to receive the payment, and that after consideration, he had concluded that he would rather have the debt than the Confederate money.

3d. Contract between Turner Horton and claimant, dated November 17th, 1870, by which Horton agreed to convey to claimant the premises in dispute, in consideration of claimant's conveying to him certain lands, and paying $1,500 00 additional, the trade to go into effect on December 25th next thereafter.

4th. The claimant testified that at the time he made the trade Horton told him that a part of the purchase money had not been paid, but said nothing about a mortgage; that he never knew of any mortgage until the levy was made. That he went into possession of the land in 1860, and has held it ever since; that there was still due to Horton $1,500 00 difference in the exchange; that six hundred acres of the land was worth from $4 00 to $5 00 per acre, and the other lot from $1,400 to $1,500 00; that he never, at any time, offered to pay the purchase money to Conyers.

Claimant offered to prove by Turner Horton that O. S. Prophitt had informed him of the consent of Conyers to receive Confederate money in satisfaction of the mortgage execution; that he communicated said information to the claimant, and that, in pursuance of said information, he (Horton) had tendered to Conyers sufficient Confederate money to discharge the mortgage, but he refused to receive it; that he had told claimant that as Conyers would receive Confederate money, which he was ready to pay, he, claimant, could with safety give to him (Horton) a deed to the lands for which he had exchanged. That claimant, thereupon, in good faith, executed a deed to him for said lands.

The plaintiff objected to the competency of said witness, on

account of Conyers being dead.    The objection was sustained, and claimant excepted.

The court charged the jury, amongst other things, as follows: "A *bona fide* purchaser for a valuable consideration, of real property, is not protected by a continuous possession thereof for four years, against a mortgage execution existing at the time of the purchase, whether such purchaser, at the time of his purchase, had or had not knowledge of the mortgage execution."

The jury found the property subject, and awarded twelve and a half per cent. damages to the plaintiff.    The claimant moved for a new trial, upon the following grounds, to-wit:

1st.  Because the court erred in the aforesaid charge.

2d.  Because the court erred in holding Horton to be an incompetent witness.

3d.  Because the verdict of the jury was contrary to the evidence in this, that it allowed the plaintiff damages when there was no proof of the claim having been interposed for delay.

The court overruled the motion on condition that the plaintiff would remit the damages.    To this ruling claimant excepted.

The plaintiff also excepted to the judgment, in so far as it required him to write off the damages.    For decision upon this point, see succeeding case.

J. J. FLOYD, for plaintiff in error.

CLARK & PACE; PEEPLES & HOWELL, for defendant.

TRIPPE, Judge.

1. The question made in this case, that the land was discharged from the lien of plaintiff's judgment, comes within and is controlled by the decision in the case of *Akin vs. Freeman*, 49 *Georgia Reports*, 51.    It is not necessary to pass upon the point whether mortgage judgments are within the provisions of section 3583 of the Code.

2. Whether the witness, Turner Horton, who was offered

Lee *vs.* Clark.

by claimant, was or was not competent, is an immaterial question, as it does not appear that the facts proposed to be proved by him could have been of any benefit to the claimant. If Dr. Conyers had agreed to take Confederate money for the debt, that could not have availed him, unless it appeared that he had been induced thereby to part with his security for his title. Even if that fact would have given him the equity he claims, it was not made to appear that he could prove he had on that account surrendered such security. The witness, Prophitt, testified that the promise was made the last day of February or first day of March, 1863. Claimant's deed to Zachary bears date January 1st, 1863—just two months previous. Horton, the defendant in the judgment, made his deed to the land levied on, to claimant, in January, 1864. No statement was made to the court below that these discrepancies between the facts which had been proved and those now claimed to be true, would be explained. Nor was any statement made that it could or would be proved that the claimant had, in fact, acted on the alleged promise of Dr. Conyers. From the facts which were in proof at the trial, and introduced by the claimant himself, it does not appear that the evidence of Horton could have been of any possible benefit to him. If it had been in his power to have explained the conflict which would have been apparent between what was in proof by himself, and what he proposed to claim under additional evidence, which was rejected, or if the rejected evidence, if admitted, would have necessarily left a hiatus, which he would have been compelled to have filled up to have made it pertinent to the issue, as he now insists he could do, the court should have been put in possession of the whole facts, and the record should show them, so that this court could intelligently pass upon them. We cannot send a case back upon a presumption that something may exist which was not proposed even to be proved, when the record could have so easily been made to disclose what is now asserted to be the precise and true *status* of the whole case.

Judgment affirmed.